# EXHIBIT A-1

Case No. 1:23-cv-01128-MEH Document 3 filed 05/04/23 USDC Colorado pg 1 of 7

| | |
|---|---|
| **DISTRICT COURT, LARIMER COUNTY, COLORADO**<br>Court Address: 201 LaPorte Avenue<br>Fort Collins, CO 80521<br>(970) 494-3500 | DATE FILED: April 11, 2023 3:07 PM<br>FILING ID: FEB1695DEF7B2<br>CASE NUMBER: 2023CV30269 |
| **Plaintiffs:**<br><br>DRYWALL SUPPLY INCORPORATED and KEN FRYE<br>v.<br><br>**Defendant:**<br><br>L&W SUPPLY CORPORATION, a foreign corporation | ▲ **COURT USE ONLY** ▲<br>Case Number:<br><br>Div.:  Ctrm: |
| R. Bruce Fickel<br>343 Mountain Avenue, Post Office Box S<br>Berthoud, CO 80513<br>Phone Number: (970) 532-2652<br>Email: berthoudlegal@gmail.com   Atty. Reg. #: 6689<br><br>Sunita Sharma<br>Law Offices of Sunita Sharma<br>7251 W. 20th Street, Suite G-1<br>Greeley, CO 80634<br>Phone Number: (970)344-5135<br>Email: Sunita@sunitasharmalaw.com Atty. Reg #28826<br><br>Kathie Troudt Riley<br>Kathie Troudt Riley, P.C.<br>2903 Aspen Drive, Unit D<br>Loveland, CO 80538<br>Phone Number: (970) 663-6316<br>FAX Number: (970) 663-6239<br>E-mail: ktr@kathielaw.com    Atty. Reg. #: 15941 | |

## COMPLAINT

Plaintiffs, Drywall Supply, Inc. and Ken Frye, by and through counsel, R. Bruce Fickel, Sunita Sharma of the Law Offices of Sunita Sharma and Kathie Troudt Riley of Kathie Troudt Riley, P.C. allege as follows:

1

## PARTIES AND JURSIDICTION

1. Plaintiff Ken Frye, ("Frye"), was the majority shareholder of Drywall Supply, Inc., a Colorado corporation. Effective August 28, 2020, Drywall Supply, Inc. and Plaintiff Frye, hereinafter collectively referred to as ("DSI") entered into an Asset Purchase Agreement (the "Agreement") with Defendant, L&W Supply Corporation ("L&W") with its primary administrative offices in the City of Loveland, County of Larimer and State of Colorado. That Agreement is attached hereto as Exhibit 1.

2. Defendant, L&W Supply Corporation ("L&W") is a Delaware corporation, registered to do business in Colorado.

3. Pursuant to paragraphs 10.8 and 10.9 of the Agreement, the Agreement is governed by and construed according to the laws of the state of Colorado. Frye and L&W consented to the exclusive jurisdiction and venue of this Court for this action.

## GENERAL ALLEGATIONS

4. DSI was a thriving family-owned and family-operated business supplying drywall materials from its locations at 740 North Denver Ave., Loveland, Colorado, 1901 120th St. Unit G, Lafayette, Colorado, and 4320 Kendrick St., Golden, Colorado (the "Locations").

5. DSI had established a base of loyal customers.

6. DSI's annual sales were consistently in excess of $19,000,000.00 per year for the preceding four years.

7. DSI was not on the market for sale.

8. L&W, a competitor of DSI in sales of drywall materials, *sua sponte*, approached DSI to discuss L&W merging with DSI by L&W purchasing the assets of DSI.

9. To entice DSI to consider the asset purchase, L&W represented to DSI, employees of DSI, and DSI customers that there would be no change in the standards of customer service DSI had established. Some of these representations were confirmed on L&W's website.

10. Consideration for the asset purchase included, among other terms, an "Earn Out" as set forth in paragraph 2.5 of the Agreement.

11. The essential elements of the Earn Out were:

   a. It would be calculated and paid based upon the Locations' combined customer sales during a twelve-month period commencing on the first day of the calendar month immediately following closing on the asset purchase ("Earn Out Period").

   b. All sales and contracts with customers during the Earn Out Period would be included in the calculation.

   c. If the sales to customers during the Earn Out Period were $19,000,000.00 or greater, DSI would be paid by L&W the sum of $1,800,000.00.

  12. After the sale, Tanisha Herder and Clayton Frye, both shareholders of DSI, stayed on with L&W as employees, pursuant to paragraphs 6.1(q) and 6.1(q) *(sic)* of the Agreement and the referenced exhibits attached to the Agreement.

  13. With the industry expertise of Tanisha Herder and Clayton Frye, and the customer base DSI had established, DSI was confident that the maximum available under the Earn Out would be reached. DSI's gross sales for 2017 were $24,331,436.00, for 2018 were $23,646,631.00, for 2019 were $20,407,315.00, and then gross sales were $10,450,838.00 for eight months in 2020

  14. Knowing that the maximum available under the Earn Out would be almost a guaranteed part of the consideration of the asset purchase, DSI agreed to sell the assets of DSI to L&W.

  15. Closing of the assets purchased occurred on August 28, 2020, and the Earn Out period commenced on September 1, 2020, and continued through August 31, 2021.

  16. Under the Agreement, in paragraph 2.5, L&W covenanted to provide quarterly reports of the sales upon which the Earn Out would be based.

  17. When L&W failed to provide the quarterly reports, Tanisha Herder notified her supervisor of the failure. In response, her supervisor, Matthew Myers, began providing the requisite reports of sales only after Tanisha Herder specifically asked for them each time.

  18. As the Earn Out period progressed, L&W, with the intent to avoid paying the Earn Out sum, refused to honor customer contracts negotiated by Clayton Frye. These contracts that had been approved by L&W were routinely unilaterally breached by L&W. This caused DSI's loyal customer base to suffer price increases as L&W would not honor the contract prices agreed upon and shipments of materials sold to customers were delayed. L&W's actions caused those customers to purchase materials from

suppliers other than L&W, thereby reducing, by millions of dollars, the sales upon which the Earn Out would be based.

19. In March of 2021, Clayton Frye began negotiating contracts with a major, national construction contractor. In conformance with L&W's previous business practices, these contracts had to be approved by Charles Collins, the vice president of the central region of L&W. Clayton Frye presented the proposed terms of his negotiations with these contractors to Charles Collins, which contracts were awarded in or about July of 2021. Mr. Collins specifically stated to DSI and Clayton Frye that these contracts would be included in the Earn Out. The values of the sales under the contracts were as follows: for the Kansas City project $1,425,894.52; for the Tennessee project $701,285.69; and for the Texas project $8,882,236.00.

20. With the sales set forth in paragraph 19, the sales under the Earn Out totaled $25,670,050.81, well in excess of the thresholds established in the Agreement. The thresholds for payment of the Earn Out as set forth in paragraph 2.5 of the Agreement are:

| Sales | Earn Out Paid |
| --- | --- |
| Less than $16,000,000 | $0.00 |
| $16,000,000 | $500,000 |
| $16,500,000 | $750,000 |
| $17,000,000 | $1,000,000 |
| $17,500,000 | $1,250,000 |
| $18,000,000 | $1,500,000 |
| $18,500,000 | $1,650,000 |
| $19,000,000 or greater | $1,800,000 |

21. Even after L&W had pre-approved these contracts through and by Charles Collins, L&W refused to consider these contractually binding agreements as sales set forth in paragraph 19 above in the Earn Out calculations. L&W has continued to sell drywall products in reliance on and in conformance with these contracts.

22. On September 9, 2021, after the expiration of the Earn Out period, in response to Tanisha Herder's request for final figures to close out the Earn Out period, Mona A. Nickels, Senior Director Finance and Controller for L&W informed Ms. Herder that reports of sales given by Matthew Myers, upon which DSI had relied, were inaccurate, and would not be used to calculate the Earn Out; and instead, ~~offered~~ tendered figures that fell below $16,000,000.00. If DSI had, as the Agreement required, been "reviewed" provided with "accurate" financial records of the sales and contracts, the shareholders of DSI, through its numerous contacts in the drywall business, could have generated sufficient sales to meet the full Earn Out.

23. L&W not only breached DSI's contracts but it manipulated the sales process and the accounting of those sales to reach the result that L&W could avoid honoring and paying the Earn Out payment to DSI.

24. L&W manipulated both the timing and numerical accuracy of the content of information provided to DSI.

25. L&W misstated and withheld information from DSI until after the Earn Out period had passed in order to reach the result such that L&W could avoid making the Earn Out payment to DSI.

26. L&W's actions set forth in paragraphs 23 through 25 above were made in bad faith.

27. The Plaintiffs have, in accordance with their Agreement, attempted to mediate a settlement to these issues, but L&W refused to mediate the aforesaid issues, electing to rely solely on the "revised" sales figures provided to DSI after the Earn Out period had expired, thereby leaving the Plaintiffs with their only remedy being to file this civil action.

## CLAIM FOR RELIEF
(Breach of Covenant of Good Faith and Fair Dealing)

28. Plaintiffs incorporate herein by reference paragraphs 1 through 26 above.

29. The Agreement, like every contract in Colorado, has an implied covenant that the parties will act in good faith and deal fairly.

30. L&W failed to comply with covenants in the Agreement; breached contracts thereby losing significant sales; manipulated the sales process by not honoring DSI's prior business practices as promised; provided erroneous accounting of sales; failed to provide timely disclosure of requisite information so that content of the information disclosed and/or the financial information which it failed to provide prevented DSI from attaining its reasonable expectations under the Agreement.

31. By its actions summarized in paragraph 30 above, and identified in paragraphs 17, 18, and 21 through 25, L&W breached the implied covenant in the Agreement that L&W's performance thereunder would be in good faith and that L&W would act in a manner such that all parties to the Agreement would attain their reasonable expectations under the Agreement.

WHEREFORE, Plaintiffs, Drywall Supply, Inc. and Ken Frye, respectfully request the Court to enter judgment for Plaintiffs and against Defendant, awarding damages in an amount to be proved at trial, with interest thereon, along with costs of this action and reasonable attorney fees, and for such further relief as the Court deems proper.

*R. Bruce Fickel*
R. Bruce Fickel

Law Offices of Sunita Sharma

*/s/Sunita Sharma\**
Sunita Sharma

KATHIE TROUDT RILEY, P.C.

By */s/Kathie Troudt Riley\**
Kathie Troudt Riley

Plaintiff's Address:
740 North Denver Ave.
Loveland, Colorado 80537

*Original signed document on file at the Law Office of R. Bruce Fickel.